## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): 13-3131

Caption [use short title]

Motion for: Emergency Stay of District Court Order

Set forth below precise, complete statement of relief sought:

Plaintiff-Appellant seeks an emergency stay of

District Court Order vacating attachment and release

funds pending appeal pursuant to Rule 8 of the

Rules of Appellate Procedure

Lauritzen Bulkers A/S,
Plaintiff-Appellant
- against -
JIT International Corp. Limited and Palmaille
Holdings Ltd.

MOVING PARTY: Lauritzen Bulkers A/S

OPPOSING PARTY: JIT International Corp. Limited

☐ Plaintiff   ☐ Defendant
☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: James H Power

OPPOSING ATTORNEY: Armand Maurice Pare

[name of attorney, with firm, address, phone number and e-mail]

Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
212-513-3200, james.power@hklaw.com

McLaughlin & Stern LLP
260 Madison Ave
New York, NY 10016
212-952-6201, jpare@mclaughlinstern.com

Court-Judge/Agency appealed from: S.D.N.Y. - Judge William H. Pauley

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1)?
☑ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

Is oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date: _____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
INJUNCTIONS PENDING APPEAL:
Has request for relief been made below? ☑ Yes ☐ No
Has this relief been previously sought in this Court? ☐ Yes ☑ No
Requested return date and explanation of emergency: Petitioner

seeks order granting stay before August 23, 2013

automatic release of attached funds.

Signature of Moving Attorney:
_~James H Power~_ Date: 8/20/13   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

---

## ORDER

**IT IS HEREBY ORDERED THAT** the motion is **GRANTED DENIED.**

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

Date: _____   By: _____

Form T-1080 (rev. 7-12)

James H. Power
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Tel.:   (212) 513-3200
Fax:   (212) 385-9010
E-mail:  james.power@hklaw.com


Attorneys for Plaintiff-Appellant

THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| | 2CA Docket #: |
| LAURITZEN BULKERS A/S, | 13-3131-cv |
| Plaintiff-Appellant | Dist. Ct. Docket #: |
| -against- | 13 Civ. 3982 (WHP) |
| JIT INTERNATIONAL CORPORATION LIMITED and PALMAILLE HOLDINGS LTD, | Notice of Appeal Filed: August 19, 2013 |
| Defendants-Appellees | |

**AFFIRMATION OF JAMES H. POWER IN SUPPORT OF
PLAINTIFF'S-APPELLANT'S EMERGENCY MOTION FOR:
(1) A STAY OF EXECUTION OF A DISTRICT COURT JUDGMENT
VACATING A MARITIME ATTACHMENT, AND (2) IN THE INTERIM,
AN ORDER STAYING EXECUTION OF THE DISTRICT COURT
JUDGMENT PENDING DECISION ON THE STAY APPLICATION**


JAMES H. POWER, an attorney admitted to practice in the State of New

York, affirms under penalty of perjury:

1.     I am a member of the bar of this Court and of the law firm of Holland

& Knight LLP, attorneys for Plaintiff-Appellant Lauritzen Bulkers A/S

("Appellant"). I am fully familiar with the facts of this case and, unless stated otherwise, the statements made herein are based on personal knowledge.

2. I submit this affidavit in support of this Emergency Motion for a Stay of Execution of a District Court Judgment Vacating a Maritime Attachment. A true copy of the Order and Judgment of the Honorable William H. Pauley III, United States District Judge for the Southern District of New York, executed on August 9, 2013 and entered that same day (the "**Vacatur Order**") is annexed as Exhibit 1.

3. Defendant-Appellee JIT International Corporation ("JIT") is or was a corporation or other business entity organized and existing under the laws of a foreign country, with an office in Shanghai, China. Defendant-Appellee Palmaille Holdings Ltd. were included in Appellant's Verified Complaint as alleged paying agent of JIT, but did not appear in the underlying District Court proceeding, though Plaintiff has reason to believe that funds of Palmaille have been restrained as a result of the Writ of Attachment having been served upon HSBC USA and HSBC.

## THE UNDERLYING DISPUTE

4. On 11 January, 2007, Lauritzen and non-party Allocean Charters Limited, executed a charter party on the New York Produce Exchange form for the charter of the vessel "OCEAN PREDATOR". The charter party is governed by English law and calls for arbitration in London.

2

5. Allocean Charters Limited was later renamed Lomar Charters Limited ("Lomar"), and the OCEAN PREDATOR was substituted by the "OCEAN PREFECT" (the "Vessel").

6. On 19 October 2012 Lauritzen and JIT executed a charter party on the New York Produce Exchange form for the subcharter of the vessel "OCEAN PREFECT". The charter party is governed by English law and calls for arbitration in London.

7. Hire payments were received from Defendant JIT and Lauritzen also received payment for charter hire for the Vessel from Defendant Palmaille Holdings, as paying agent on behalf of Defendant JIT.

8. A dispute arose out of damage suffered to cargo carried on board the Vessel during a voyage from China to Venezuela. This cargo included truck-mounted oil rigs and other ancillary equipment.

9. Lomar has secured cargo interests' claim by way of a USD 20 million (plus interests and costs) Letter of Undertaking (LoU), following the arrest of the Vessel at Guanta, Venezuela by cargo interests.

10. Lauritzen have secured Lomar by way of a USD 20 million (plus interests and costs) Letter of Undertaking.

11.    Under the back-to-back Subcharter incorporating the Inter-Club Agreement (ICA) which creates an entitlement to security based on reciprocity, JIT is similarly obligated to provide security for claims by Lauritzen to be made in London arbitration pursuant to the Subcharter.  Lauritzen has posted $20 million in security and seeks the same from JIT.

12.    Lauritzen sent a written demand to JIT calling upon them to furnish security for the claim.  To date, JIT has not responded to the notice and has not voluntarily posted security for the claim and has indicated it is unwilling to voluntarily do so.

13.    The Charter and Subcharter are governed by English law, which routinely allows for costs, including a reasonable allowance for attorney's fees incurred in the foreign arbitration proceeding.

14.    As best as can now be estimated, Lauritzen expects to recover up to $20 million plus interests and costs in arbitration from JIT.

15.    Appellant, by and through its attorneys, filed a Verified Complaint for attachment in the above-styled case in the Southern District of New York on June 11, 2013.  Appellant commenced the Southern District of New York Admiralty Rule B proceeding as a basis to secure its claims prior to commencing a potentially long and certainly expensive arbitration in London against JIT.  A true and correct

4

copy of the Verified Complaint and supporting memorandum of law is attached hereto as Exhibit 2.

16.     JIT and JIT's paying agent Palmaille Holdings each maintain at least one active U.S. dollar bank account at Hong Kong and Shanghai Banking Corporation, Limited ("**HSBC**").

17.     As set forth in HSBC USA's answer, HSBC maintains at least one correspondent account for the benefit of its U.S. Dollar account customers, like JIT and Palmaille, at garnishee HSBC USA.

18.     It is common knowledge that the credits housed in correspondent accounts within this District, such as the HSBC correspondent account located at HSBC USA, are maintained for the benefit of the foreign bank's U.S. Dollar customers.

19.     In 2010, the First Department of the New York Supreme Court's Appellate Division decided the case of *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.,* 70 A.D.3d 456 (1st Dep't 2010).  A true and correct copy of *Cargill* is attached hereto as Exhibit 3.  In Cargill, a lender sought and obtained order of attachment against correspondent account of a debtor Ukrainian bank called OJSC Bank Finance and Credit ("**Ukrainian Bank**"). Like HSBC, the

Ukrainian Bank maintained correspondent accounts in its name with various correspondent banks in New York, including HSBC USA.[1]

20.    The First Department upheld the New York Supreme Court's decision to vacate the attachment because the record on appeal demonstrated that most of the attached funds in the correspondent accounts were actually being held for the benefit of the Ukrainian Bank's customers, and were found to contain the funds of the Ukrainian Bank's clients.  There was nothing submitted to the District Court in the present matter to suggest that the correspondent account of HSBC at HSBC USA differs in any way from the correspondent accounts held by the Ukrainian Bank at the various New York correspondent banks including HSBC USA.

21.    At the trial level, after an evidentiary hearing Judge Ramos made a finding based on a significant amount of discovery that "the bank accounts are correspondent accounts maintained by a foreign bank (the defendant) for the benefit of its clients as well as for its own benefit.  The bulk, if not all, of the funds restrained were the funds of the defendant's customers."  A true and correct copy of Judge Ramos' written decision, dated August 5, 2009, which formed the basis of the appeal to the First Department is attached hereto as Exhibit 4.  Also attached to Exhibit 4 is the affidavit of Sergey Borisov, which in addition to testimony by

---

[1]  In *Cargill,* correspondent accounts of the Ukrainian Bank were restrained at Deutsche Bank, Standard Chartered, Bank of New York, JP Morgan, Citibank and HSBC USA.

another Ukrainian banking official, was considered by Judge Ramos in issuing his decision. Evidence was presented at the trial level by Plaintiff Cargill and third-party correspondent banks that the funds attached were those of the Ukrainian Bank because the account was in the name of the Ukrainian Bank. The Ukranian Bank presented contrary evidence that the funds in the Ukrainian Bank's New York correspondent accounts with Bank of New York, JP Morgan, Citibank and HSBC USA were the funds of its customers, except for a small percentage of the total funds which were shown by the Ukrainian Bank to be its funds for its own account and benefit.

22.     On June 12, 2013, the District Court, after an *ex parte* hearing and the submission of supporting documents, describing the correspondent account relationship, issued a Rule B attachment order directing seizure of JIT's and Palmaille's beneficial interest in the credits housed at HSBC USA by HSBC, up to the amount of their U.S. account balances at HSBC. A transcript of the hearing held on June 12, 2013 is attached hereto as Exhibit 5.

23.     On July 3, 2013 HSBC USA filed an Answer to the Writ of Garnishment which stated that it did not hold any property of Defendants in the United States as of the date of the Answer. The Answer also requested that Judge Pauley vacate the Writ of Attachment. The Answer filed by HSBC USA is attached hereto as Exhibit 6.

24.   The Answer raised myriad legal and factual issues.  Specifically, Paragraph 7 provides that "[a]s of the date of this answer, [HSBC USA] does not hold within the district any (i) property or assets (tangible or intangible) in its possession, custody or control, or to which [HSBC USA] holds legal title, that are owed or belong to Defendants; (ii) funds or credits that belong to or are held for the benefit of, Defendants in the correspondent account that [HSBC USA] holds for the benefit of [HBAP]; and (iii) property (tangible or intangible) as a fiduciary to which [HBAP] for the benefit of defendant has an interest."  Exhibit 6 at 2-3.

25.   Among the factual issues is the Answer's general qualification that the facts stated are true as of the date of the **_answer_** as opposed to the date the Order and Writ of attachment were **_served_**.

26.   Similarly, statements by the garnishee concerning the question of whether credits in the HSBC correspondent account are "owed" to or are for the "benefit" of the Defendants, or whether Defendants have an "interest" in these credits, were mere conclusory statements concerning the precise legal issue at bar.

27.   In a letter dated July 17, 2013, Appellant sent a letter to the Court describing the issues raised by the Answer, and stating that as between HSBC USA and Appellant, an "informal information sharing schedule, or, in the alternative, [a] formal Rule 26 discovery conference" would commence.  The letter request for

8

discovery was limited to HSBC USA as Defendant JIT had not yet appeared. The July 17 letter from Appellant to the Court is attached hereto as Exhibit 7.

28.    On July 24, 2013 the District Judge ordered that all parties submit letters to the Court prior to a "status conference" concerning the request for vacatur. ("**Status Conference Order**").   A true and correct copy of the Status Conference Order is attached hereto as Exhibit 8.  It was the express understanding of the undersigned counsel that the requested letters in the Status Conference Order would be solely for the purpose of identifying the relevant legal issues and Plaintiff's request for limited discovery.

29.    In addition to the letters submitted by Lauritzen and HSBC USA, defendant JIT unexpectedly submitted a letter as well.  JIT appeared only *after* the Status Conference Order issued.   JIT suggested that the attachment be vacated by reason of the HSBC USA's Answer and for other alternative reasons set forth in JIT's letter.  True and correct copies of HSBC USA's and JIT's letters are attached hereto as Exhibit 9.

30.    On the same day, Appellant filed a letter which requested discovery in advance of any vacatur of the attachment.  The letter submitted by Appellant is attached hereto as Exhibit 10.

31.    On August 9, 2013 the Court held the status conference as planned.  However, at that conference, without the opportunity to dispute any unsupported

9

allegations or legal characterizations or otherwise formally brief the issues, the District Judge vacated the attachment.  A true and correct copy of the uncorrected transcript (edits pending) is attached hereto as Exhibit 11.

32.     After Judge Pauley issued a ruling from the bench, as counsel for Appellant, the undersigned orally requested that the District Judge issue a stay of the Order pending appeal in addition to the 14 day automatic stay provided by the Federal Rules.  Judge Pauley declined to issue a stay.  See Transcript of the August 9, 2013 hearing before Judge Pauley attached hereto as Exhibit 11 at 29, ln. 6-24.

33.     Based on the foregoing, Appellants respectfully request that this Court issue an order staying the Vacatur Order until this Court decides Appellant's appeal.  Without the granting of the requested stay, the Property presently under attachment would be subject to release from attachment in the federal proceedings as early as August 23, 2013 (day 14 after Judge Pauley's August 9 Order).

34.     Appellant respectfully submits that the foregoing shows that the Property may be released if the August 23, 2013 automatic stay termination date passed and, in such a case there would be no *res* remaining over which the court could exercise its *quasi in rem* jurisdiction under Rule B.  Essentially, Appellant's prosecution of this appeal would become an empty rite.

35.     On August 19, 2013 Appellants filed a Notice of Appeal from the August 9, 2013 Vacatur Order.  A true copy of the Notice of Appeal is annexed as

10

Exhibit 12.  On August 20, Appellant received a docket number from the Clerk of the Second Circuit.  Similar requests for stays have been granted under like circumstances.

36.　A true and correct copy of *Front Carriers Ltd. v. Transfield ER Cape Ltd*, No. 10-484-cv (2d Cir. Feb. 23, 2010) is attached hereto as Exhibit 13.

37.　A true and correct copy of *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* No. 07-4193-cv (2d Cir. Jan 30, 2008) is attached hereto as Exhibit 14.

38.　A true and correct copy of *Eitzen Bulk A/S v. Capex Industries A/S,* No. 09-1987-cv (2d Cir. June 9, 2009) is attached hereto as Exhibit 15.

39.　A true and correct copy of *Transatlantic Maritime S.A. v. Heracles General Cement Co.,* No. 10-0012-cv (2d Cir. Jan. 8, 2010) is attached hereto as Exhibit 16.

40.　A true and correct copy of *Soloman Sea Enterprise S.A. v. Hudson Shipping Lines, Inc.,* No. 10-0048-cv (2d Cir. Jan. 12, 2010) is attached hereto as Exhibit 17.

41.　A true and correct copy of *Scanscot Shipping Serv. (Deutschland GmbH v. Metals Tracomex Ltd.,* No. 08-cv-7505 (PGG) (S.D.N.Y. Dec. 23, 2009) is attached hereto as Exhibit 18.

42.    A true and correct copy of *Goodearth Maritime Ltd. v. Fenby Co. Ltd*, No. 09-5068-cv (2d Cir. Dec. 11, 2009) is attached hereto as Exhibit 19.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 20, 2013

_James H. Power_

James H. Power

James H. Power
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Tel.:  (212) 513-3200
Fax:  (212) 385-9010
E-mail:  james.power@hklaw.com


Attorneys for Plaintiff-Appellant

THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| LAURITZEN BULKERS A/S, | 2CA Docket #:<br>13-3131-cv |
| Plaintiff-Appellant | Dist. Ct. Docket #: |
| -against- | 13 Civ. 3982 (WHP) |
| JIT INTERNATIONAL CORPORATION<br>LIMITED and<br>PALMAILLE HOLDINGS LTD, | Notice of Appeal Filed:<br><br>August 19, 2013 |
| Defendants-Appellees | |

## MEMORANDUM OF LAW IN SUPPORT OF
## EMERGENCY MOTION FOR STAY PENDING APPEAL

Pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure, Lauritzen

Bulkers A/S ("**Lauritzen**" or "**Appellant**"), hereby submits this emergency motion

for an order staying the effectiveness of the District Court's August 9, 2013[1] order

vacating the June 12, 2013 Order of Maritime Attachment and Garnishment ("**Rule

---

[1] A copy of the Vacatur Order is attached as Exhibit 1 to the Affirmation of James
H. Power dated August 20, 2013 (Power Affirmation)

{BC00002269 1}

**B Attachment**") pending Lauritzen's appeal thereof (the requested "**Stay Pending Appeal**").

Because the Federal Rule of Civil Procedure Rule 62 "14 day automatic stay" expires on August 23, 2013, Lauritzen respectfully requests that this Circuit issue the Stay pending appeal **before** the close of business on **August 23, 2013**.

The Stay Pending Appeal will merely serve to maintain the status quo pending appeal and has been routinely granted by this and other Courts in the context of Rule B attachment vacatur cases.

Moreover requirements for a Stay Pending Appeal are easily met here and the well established stay-factors weigh in favor of granting a stay. Lauritzen will be irreparably harmed if the Funds are released during the pendency of this appeal, because that property is the sole mechanism by which it maintains jurisdiction over defendants JIT International Corporation Limited ("**JIT**") and Palmaille Holdings Ltd. ("**Palmaille**"). Absent a stay, Lauritzen's appeal will be an "empty rite." Lauritzen is entitled to a meaningful appeal.

By contrast, neither the Defendants nor garnishee will be harmed if a stay is granted. Money is both fungible and the very commodity in which the garnishee HSBC USA as well as HSBC[2] deal. There is little to no harm to the garnishee

.

---

[2] Hong Kong Shanghai Banking Corporation Limited

2

HSBC USA or to defendants JIT and Palmaille if the funds remain in the account while Lauritzen prosecutes its appeal.

The issues on this appeal are purely legal and center on the questions of whether a defendant maintains an attachable beneficial interest in bank credits stored in correspondent banks in New York under United States maritime law. An additional legal issue presented by the Court's decision concerns the necessity of discovery in connection with representations by a garnishee that conflict with evidence submitted by Plaintiff in support of the Verified Complaint seeking the initial attachment order. The District Court's findings with respect to both of these issues will be reviewed *de novo* by this Court.

Under the circumstances, a Stay Pending Appeal is appropriate and should be granted.

## FACTS

### *A. The Underlying Dispute*

Appellants, by and through their attorneys, filed a Verified Complaint for attachment in the above-styled case in the Southern District of New York on June 11, 2013. A copy of the Verified Complaint and supporting Memorandum of Law is attached to the Power Affirmation as Exhibit 2.

As set forth in the Verified Complaint, this Rule B attachment arises out of a dispute between non-party Lomar Charters Limited ("Lomar"), Lauritzen

3

("Owners") and JIT ("Charterers") under a head charterparty and subcharter relating to the M/V OCEAN PREFECT (the "Vessel"). Ex. 2 ¶ 7-9. During a voyage from Chinese load ports to Venezuelan discharge ports the cargo carried onboard the Vessel was damaged. *Id.* ¶ 11. This cargo included truck-mounted oil rigs and other ancillary equipment. Comp. Ex. 2. Owners' claims against the Charterers arise out of the voyage and in relation to the damaged cargo including, but not limited to any liability arising under or in relation to the charterparty and/or the Inter Club Agreement incorporated therein.

Non-party Lomar has secured cargo interests' claims up to the amount of $20,000,000.00. Ex. 2 ¶ 12. In turn, Lauritzen has secured Lomar's claims up to the same amount. *Id.* ¶ 13. Lauritzen seeks security in the amount of $20,000,000.00 from Defendant JIT (its contractual counterparty) to secure itself against claims by Lomar under the head charterparty for which Lauritzen has posted security in the same amount.

As best as can now be estimated, Lauritzen expects to recover up to $20 million plus interests and costs in arbitration from JIT.

### B. The Rule B Attachment

JIT and JIT's paying agent Palmaille Holdings each maintain at least one active U.S. dollar bank account at Hong Kong and Shanghai Banking Corporation, Limited ("**HSBC**"). Power Affirmation ¶ 16.

4

HSBC has certified in accordance with U.S. law that it is a "foreign bank" within the meaning of 31 C.F.R. §103 *et seq*. that maintains a U.S. dollar "correspondent account" as defined in 31 C.F.R. §103 *et seq*. on behalf of its customers.[3]  Power Affirmation, Ex. 2 at ¶ 20.

HSBC maintains at least one correspondent account for the benefit of its U.S. Dollar account customers, like JIT and Palmaille, at garnishee HSBC USA, a direct affiliate of HSBC.  *See* Power Affirmation Ex. 6.

It is common knowledge that the credits housed in correspondent accounts within this District, such as the HSBC correspondent account located at HSBC USA, are maintained for the benefit of the foreign bank's U.S. Dollar customers.

In 2010, the First Department of the New York Supreme Court's Appellate Division decided the case of *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.,* 70 A.D.3d 456 (1st Dep't 2010).  *See* Power Affirmation Ex. 3.    In Cargill, a lender sought and obtained order of attachment against correspondent account of a debtor Ukrainian bank called OJSC Bank Finance and Credit ("**Ukrainian Bank**"). Like HSBC, the Ukrainian Bank maintained correspondent

---

[3] On March 1, 2011 certain regulations were moved from 31 C.F.R. Part 103 to 31 C.F.R. Chapter X.

5

accounts in its name with various correspondent banks in New York, including HSBC USA.[4]

The First Department upheld the New York Supreme Court's decision to vacate the attachment because most of the attached funds in the correspondent accounts were actually being held for the benefit of the Ukrainian Bank's customers, and were found to mostly contain the funds of the Ukrainian Bank's clients.

At the trial level, after an evidentiary hearing Judge Ramos made a finding based on a significant amount of discovery that "the bank accounts are correspondent accounts maintained by a foreign bank (the defendant) for the benefit of its clients as well as for its own benefit. The bulk, if not all, of the funds restrained were the funds of the defendant's customers." *See* Power Affirmation Ex. 4.

On June 12, 2013, the District Court, after an *ex parte* hearing and the submission of supporting documents, describing the correspondent account relationship, issued a Rule B attachment order directing seizure of JIT's and Palmaille's beneficial interest in the credits within the New York-located

---

[4] In *Cargill,* correspondent accounts of the Ukrainian Bank were restrained at Deutsche Bank, Standard Chartered, Bank of New York, JP Morgan, Citibank and HSBC USA.

correspondent bank account of HSBC at HSBC USA up to the amount of JIT's and Palmaille's U.S. account balances at HSBC.

### C.  HSBC USA's Answer and the Vacatur Order

On July 3, 2013, HSBC USA filed an answer as garnishee with respect to the Rule B Attachment Order ("**Answer**").  *See* Power Declaration Exhibit 6.

The Answer raised myriad legal and factual issues.  Specifically, Paragraph 7 provides that "[a]s of the date of this answer, [HSBC USA] does not hold within the district any (i) property or assets (tangible or intangible) in its possession, custody or control, or to which [HSBC USA] holds legal title, that are owed or belong to Defendants; (ii) funds or credits that belong to or are held for the benefit of, Defendants in the correspondent account that [HSBC USA] holds for the benefit of [HBAP]; and (iii) property (tangible or intangible) as a fiduciary to which [HBAP] for the benefit of defendant has an interest." Ex. 6 at 2-3.

Among the factual issues is the Answer's general qualification that the facts stated are true as of the date of the ***answer*** as opposed to the date the Order and Writ of attachment were ***served***.

Similarly, statements by the garnishee concerning the question of whether credits in the HSBC correspondent account in New York are "owed" to or are for the "benefit" of the Defendants, or whether Defendants have an "interest" in these credits, were mere conclusory statements concerning the precise legal issue at bar.

7

In a letter dated July 17, 2013, Lauritzen sent a letter to the Court describing the issues raised by the Answer, and stating that as between HSBC USA and Lauritzen, an "informal information sharing schedule, or, in the alternative, [a] formal Rule 26 discovery conference" would commence. Power Affirmation Ex. 7.

On July 24, 2013 the District Judge ordered that all parties submit letters to the Court prior to a "status conference" concerning HSBC USA's request for vacatur based on the denials made in HSBC USA's answer. Power Affirmation Ex. 8 ("**Status Conference Order**").

It was the express understanding of the undersigned counsel that the requested letters in the Status Conference Order would be solely for the purpose of identifying the relevant legal issues and Plaintiff's request for limited discovery.

In addition to the letters submitted by Lauritzen and HSBC USA, defendant JIT unexpectedly submitted a letter as well. JIT appeared only *after* the Status Conference Order issued. JIT suggested that the attachment be vacated by reason of the HSBC USA's Answer and for other alternative reasons set forth in JIT's letter. Power Affirmation Ex. 9.

On August 9th, the Court held the status conference as planned. However, at that conference, without the opportunity to dispute any of the factual allegations or legal characterizations put forth by the garnishee or defendant JIT, or to

8

otherwise brief the issues, the District Judge vacated the attachment, citing *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009) ("**Jaldhi**"). Power Affirmation Ex. 11 and 12.

*Jahldhi* is a case concerning attachments of electronic wire transfers en route through intermediary banks, not a beneficial interest in correspondent bank credits located within the District. Attachments of wire transfers are prohibited by *Jaldhi*, and Article 4-A of the Uniform Commercial Code. There is no case-law or statute which governs or prohibits attachments of beneficial interests of foreign banks' customers in correspondent bank accounts under maritime law and certainly no statutory prohibition on the attachment of New York correspondent accounts in general.

## ARGUMENT

### A STAY PENDING APPEAL SHOULD BE GRANTED

**A.    The Standard for Granting Stay**

Federal Rule of Appellate Procedure 8 sets forth various requirements for the granting of a stay pending appeal, all of which are satisfied here.

First, at the Status Conference, after the District Judge ruled that he was vacating the attachment, Lauritzen made an oral request for a stay pending appeal to the District Court. Lauritzen's request for a stay of the release of the attached funds pending appeal was denied. Power Affirmation Ex. 11 at 29.

9

Second, notice has been provided to all relevant parties. Third, this motion and the accompanying Power Affirmation contain originals or copies of relevant parts of the record.

Moreover, the factors courts consider when examining whether to grant a stay pending appeal are well established and weigh in favor of a stay here. A stay pending appeal can be granted upon a showing of four factors: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer injury if a stay is issued, (3) whether the movant has demonstrated a 'substantial possibility, although less then a likelihood of success on appeal' and (4) the public interest that may be affected." *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir. 1994); *see also McCue v. City of New York,* 503 F.3d 167, 170 (2d Cir. 2007) (applying factors and granting stay).

These factors are treated "somewhat like a sliding scale" and the necessary level or degree will vary according to the court's assessment of the other stay factors. *Thapa v. Gonzales,* 460 F.3d 323, 334 (2d Cir. 2006).

Due in part to the obvious harm associated with an improper release of attached property of peripatetic maritime defendants over whom jurisdiction solely exists by virtue of the attachment, courts in this Circuit and others have granted stays pending appeal of Rule B attachment vacatur orders routinely and as a matter of course. *See, e.g., Front Carriers Ltd. v. Transfield ER Cape Ltd,* No. 10-484-cv

(2d Cir. Feb. 23, 2010) (Power Affirmation Ex. 13); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* No. 07-4193-cv (2d Cir. Jan 30, 2008) (citing *McCue*) (Power Affirmation Ex. 14); *Eitzen Bulk A/S v. Capex Industries A/S,* No. 09-1987-cv (2d Cir. June 9, 2009) (Power Affirmation Ex. 15); *Transatlantic Maritime S.A. v. Heracles General Cement Co.,* No. 10-0012-cv (2d Cir. Jan. 8, 2010) (Power Affirmation Ex. 16); *Soloman Sea Enterprise S.A. v. Hudson Shipping Lines, Inc.,* No. 10-0048-cv (2d Cir. Jan. 12, 2010) (Power Affirmation Ex. 17); *Scanscot Shipping Serv. (Deutschland GmbH v. Metals Tracomex Ltd.,* No. 08-cv-7505 (PGG) (noting "trend in the Second Circuit with respect to stays in connection with appeals of [Rule B] vacatur orders") (Power Affirmation Ex. 18); *Goodearth Maritime Ltd. v. Fenby Co. Ltd*, No. 09-5068-cv (2d Cir. Dec. 11, 2009) (Power Affirmation Ex. 19).

**B.   Lauritzen Will Suffer Irreparable Harm Absent a Stay**

As noted in the *Scancot, Eitzen Bulk and Western Bulk*[5] decisions, as well as the numerous emergency stay applications this Circuit has granted, the loss of pre-judgment security and the jurisdictional predicate afforded to maritime plaintiffs by Rule B constitutes the requisite  irreparable harm. *See Scanscot Shipping Servs.*

---

[5]*See Eitzen Bulk A/S v. Capex Industries Ltd.*, No. 09-1987-cv (2d Cir. June 9, 2009); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* 528 F.Supp.2d 186 (S.D.N.Y. 2007) ("*Centauri I*") (finding no "irreparable harm"), *overruled by Centauri Shipping Ltd. v. Western Bulk Carriers KS.,* No. 07-4193-cv (2d Cir. Jan. 30, 2008) ("*Centauri II*").

11

*GmbH v. Metales Tracomex Ltda*, No. 08-cv-7505 (S.D.N.Y. Dec. 23, 2009) at 2 (so characterizing *Eitzen Bulk* and *Centauri II*).  Justice Frankfurter arrived at the same conclusion more than 50 years ago:

> [a]ppellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible.

*Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.,* 339 U.S. 684, 689 (1950).[6]

Here, absent a stay, Lauritzen's appeal will similarly be an empty rite. Lauritzen should have a meaningful opportunity to appeal the District Court's erroneous decision.

## C.    A Stay Will Not Substantially Harm Defendants

The Federal Rules provide a mechanism pursuant to which an appellant can be ordered to pay costs and expenses in the event that an appellee succeeds on appeal.  See Fed. R. Civ. P. 54.  Moreover, the Funds at issue can be placed in an interest-bearing Escrow Account and can remain there, earning interest, until the conclusion of these proceedings

---

[6]   The justification underlying maritime attachment is the that maritime entities are peripatetic creatures that may "dissipate[] or hide[] [their] assets thereby unfairly depriving plaintiff of the security Rule B is intended to confer." *Sonito Shipping Co. v. Sun United Maritime Ltd.,* 478 F. Supp. 2d 532, 542 (S.D.N.Y. 2007); *Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion,* 732 F.2d 1543, 1548 (11th Cir. 1984) (Maritime attachment is designed to prevent subjecting maritime claimants to vagaries of "[i]ntricate corporate shells . . . employed to disguise the ownership of shipping assets").

As District Judge Gardephe noted, there is no independent harm to defendants other than their funds remaining in this District – the very issue on appeal. *See Scanscot Shipping Servs.,* Power Affirmation Ex. 18. This lack of harm to Appellees supports a stay here. *See Mohammed v. Reno,* 309 F.3d 95, 102 (2d Cir. 2002) (where appellant faces much graver injury if a stay is denied compared to injury facing appellee if stay is granted, the Court may grant stay even if there is less than a likelihood of success).

## D.    Lauritzen Has a Substantial Possibility of Success

The principal legal issue in this case is whether defendants maintain an attachable beneficial interest in the credits maintained in HSBC's correspondent account at its affiliate HSBC USA, up to the amount of their USD account balances on deposit at HSBC at the time the writs of attachment were served on June 14, 2013.

Lauritzen respectfully submits that the answer is "yes," and that it will prevail on appeal.

There is no Second Circuit precedent which dictates the issue of whether a foreign U.S.D. account holder maintains an attachable beneficial interest in correspondent bank account credits under maritime law.

However, it is clear that New York's First Department and New York Supreme Court Justice Ramos have found the foreign account holders' interest in

the correspondent account credits is sufficient to justify vacatur of an attachment of those credits with respect to a claim against the foreign bank (not the customers), because that attachment would interfere with the customers' rights in those credits. *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.,* 70 A.D.3d 456 (1st Dep't 2010).

*Cargill* affirmed that the beneficial interest of foreign U.S. Dollar account holders such as Defendants in correspondent account credits is sufficient reason to vacate an attachment of those credits with respect to a claim against the foreign bank.

*A fortiori*, third parties such as Defendants maintain a legally recognizable beneficial interest in the credits housed in their foreign bank's correspondent account at correspondent banks. *Cargill Fin. Serv. Int'l, Inc. v. Bank Financial and Credit Ltd.,* (New York Sup. Aug. 5, 2009) ("The bulk, if not all, of the funds restrained were the funds of the defendant's customers. For the plaintiff to suggest, as it does in the Supplemental Affirmation of counsel submitted after the fact that because the bank-defendant was Ukrainian and presumably not worthy of trust, is offensive and ***ignores the nature of these correspondent accounts*.**"   *See* Power Affirmation Ex. 4.

The well-established maritime law governing attachable interest encompasses nearly all interests of a defendant in such property.   *See, e.g.,*

14

*Starboard Venture Shipping Inc. v. Casinomar Transportation Inc.,* 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.) at *7 (indicating that ownership for Rule B purposes includes "contingent" and "conditional future interests" of a defendant and that "Rule B does not require that a defendant, in addition to ownership, have full control over its goods, chattels, credits or effects").

Nearly 80 years ago, Judge Learned Hand held that a maritime defendant's <u>future</u> interest in property may be attached. In *Kingston Dry Dock Co. v. Lake Champlain Transportation Co.*, 31 F.2d 265 (2d Cir. 1929), the plaintiff attached canal boats that were still owned by another because a pending sale was not final. It was undisputed that the defendant had no "title" to the attached vessels. Nevertheless, the Second Circuit held that the attachment of the vessels as defendant's property was valid. *Id.* at 266-67; *see also Vamvaship Maritime Ltd. v. Shivnath Rai Harnarain (India) Ltd.*, No. 06 Civ. 1849, 2006 WL 1030227, at *2-3 (S.D.N.Y. Apr. 20, 2006) (upholding attachment of prepayment of executory contract, even where third-party contractor subsequently cancelled its contract, because the defendant had a property interest in the attached funds that was more than a "mere expectancy").

Similarly, admiralty courts have regularly recognized that a maritime defendant's ***beneficial*** property interest in moneys being received or paid by a paying and/or receiving agent is attachable, even though the defendant has no

15

"title" to the funds, but merely a future expectancy interest. *See, e.g., Petrohawk Energy Corp. v. Law Debenture Trust Co.,* No. 06 Civ. 9404, 2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) (explaining the meaning of "paying agent" in a commercial context); *Tarstar Shipping Co. v. Century Shipline Ltd.,* 451 F. Supp. 317, 324 (S.D.N.Y. 1978) (explaining concept of "paying agent" in the maritime industry, where it is common for owners and/or charterers to utilize agents for the receipt and/or payment of freight, hire or other assets). Paying agents transfer sums from, or receive assets in, accounts in their name, but the beneficial interest in these moneys lies with the principal on whose behalf the funds are either being paid or received. This beneficial property interest is attachable under maritime law.

Here, irrespective of whether HSBC maintains "title" to the credits in the correspondent account at HSBC USA, the New York correspondent account maintains credits beneficially owed to HSBC's USD account holders, including but not limited to Defendants. As such, maritime precedent makes clear that this beneficial interest is attachable.

The Court erroneously relied upon the Second Circuit's decision in *Jaldhi*, to vacate the Rule B attachment. However, "...Jaldhi dealt only with the restraint of EFTs passing through intermediary banks." *Granite Enterprises Ltd. v. Virgoz Oils & Fats Pte Ltd.*, No. 09-cv-4534, 2010 WL 532310, *1 (S.D.N.Y. Feb. 11, 2010).

However this is not a wire transfer case, and as such *Jaldhi* and its progeny do not control here.

In *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), the Second Circuit considered this issue, finding in favor of allowing for the attachment of wire transfers under maritime law. The Second Circuit carefully examined UCC 4A's wire transfer prohibition and the historical outcome of conflicts between state law and maritime law in terms of attachment, which were generally resolved in favor of maritime law. *Winter Storm*, 310 F.3d at 279-80. On this basis, the Second Circuit concluded that UCC 4A's wire transfer prohibition did not apply in maritime cases.

Between 2002 and 2009, wire transfers being processed by intermediary banks were attachable under maritime law. In 2009, the Second Circuit reversed itself in *Jaldhi*, and held that pursuant to UCC 4A's wire transfer prohibition, adopted as law in New York State, wire transfers would no longer be attachable while be processed in intermediary banks pursuant to Rule B.

Bank accounts, including but not limited to correspondent accounts, are governed by UCC Article 4 ("UCC 4"), ***not*** UCC Article 4-A. Unlike UCC 4A, which contains an express prohibition on the attachment of a defendant's beneficial interest in wire transfers being processed by an intermediary bank, UCC 4 contains no analogous prohibition on the attachment of a defendant's beneficial interest in

17

the USD credits housed in New York located correspondent bank accounts.  For this reason, HSBC USA has not been able to point to any case or statute that stands for the proposition that the proposed attachment is not permissible.  HSBC USA and the District Court merely rely on unsupported statements of policy with respect to disruption of financial institutions in New York.

Also unlike *Jaldhi*, this is not a case where the broad scope of federal maritime attachments is in conflict with state statute because there is no New York state statute on point.  As such, the Court's reliance on *Jaldhi* was misplaced.

Foreign USD account holders, including JIT and Palmaille, have an obvious beneficial interest in the correspodnent bank credits attached.  The question on appeal is simply whether this is an attachable interest.

Maritime law has historically treated such interests as attachable, and there is no state-law bar to the attachment.

Finally, becase the legal issue of whether JIT and Palmaille maintain an attachable, beneficial interest in the correspondent account credits is ***also*** the basis for *quasi in rem* jurisdiction over JIT and Palmaille, the District Court erred by failing to grant Lauritzen's request for jurisdictional discovery.

District courts routinely order jurisdictional discovery where the plaintiff has made a "threshold showing that there is some basis for the assertion of jurisdiction [...by alleging] facts that would support a colorable claim of

18

jurisdiction." *Daval Steel Products, Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 (2d Cir. N.Y. 2007)(This Court held that it would constitute "legal error" for a district court to "forbid[] jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction.").

Further, in *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. N.Y. 2003), this Court recognized that "a court should take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction…" Here, the District Court clearly did not give Lauritzen ample opportunity to obtain evidence to butress its allegations concerning the correspondent bank accounts at issue or dispute the self-interested assertions of garnishee HSBC USA and defendant JIT. *See Maryland Tuna Corp. v. MS Benares,* 429 F.2d 307, 322 (2d Cir. 1970) (maritime attachment case in which discovery was ordered concerning ownership of assets and garnishee's contentions to the contrary).[7]

---

[7] *See also Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (H.K.) Co., Ltd.*, 2012 U.S. Dist. LEXIS 145949, *4 (S.D. Tex.) (Oct. 10, 2012) (in granting unrestricted discovery, the court held: "When a factual question governs the Court's jurisdiction, the Plaintiff must have ample opportunity to secure and present evidence relevant to the jurisdictional questions"); *Kite Shipping LLC v. San Juan Navigation Corp.*, 2012 U.S. Dist. LEXIS 96199, *20 (S.D. Cal. July 11, 2012)(The District Court found that the Magistrate Judge abused his discretion in denying jurisdictional discovery at the Rule E(4)(f) stage, and ordered the parties to conduct expedited, limited discovery); *KPI Bridge Oil Sing. PTE Ltd. v. Berlian*

**E.**        **The Public Interest Factor Supports a Stay**

While Lauritzen acknowledges that public interest factors may well be somewhat relevant to the final outcome of this case, there are no public interest factors that are relevant to the limited question of whether a stay should issue here.

To the extent that this Circuit is inclined to consider the District Court's conclusion that these attachments, if permitted, will cause disruption to New York's financial system, Lauritzen challenges this assumption as unfounded and should be permitted to submit evidence to the contrary and otherwise challenge the validity of the representation.

This is particularly true given the language of the District Court's holding. The District Court did not make a finding that there was no attachable beneficial interest in correspondent bank account credits under maritime law.  Rather, the Court merely cited *Jaldhi* for the proposition that if the attachment were maintained, the attachment would be detrimental to the banking system.  "…[I]t would threaten 'New York's standing as an international financial center.'  See *Jaldhi*, 585 F.3d at 71."  Power Affirmation, Ex. 1.

---

*Laju Tanker TBK PT*, 2012 U.S. Dist. LEXIS 37751, *14 (N.D. Cal. 2012; *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, 2011 U.S. Dist. LEXIS 24723, *3 (S.D. Tex. Mar. 10,2011)(The court allowed jurisdictional discovery to be taken from an owner who disputed that it was an alter ego of the defendant); *Res. Marine Pte, Ltd. v. Solym Carriers (London) Ltd.*, 2012 U.S. Dist. LEXIS 179820, *9 – 10 (E.D. Cal. Dec. 18, 2012)(The court reserved decision on the Rule E motion to vacate pending the conclusion of jurisdictional discovery).

## CONCLUSION

For the foregoing reasons, this Court should enter a stay of its order disbursing the funds pending Lauritzen's appeal. In accordance with Rule 3.01(g) the undersigned counsel has conferred with counsel for defendant JIT, and he objects to the relief sought herein. It is further assumed (for the purposes of this appeal) that counsel for garnishee HSBC USA likewise opposes this stay request.

Dated: August 20, 2013

HOLLAND & KNIGHT LLP

By: _____

James H. Power
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010

Email: james.power@hklaw.com

*Attorney for Plaintiff Lauritzen Bulkers A/S*

21