## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---------------------------------------------------------X
                :

LAURITZEN BULKERS, A/S        :
                :

       Plaintiff-Appellant,    :     2 CA Docket No. 13-3131-CV
                :

       - against -        :    [S.D.N.Y. Civ. Action 13-3982 (WHP)]
                :

JIT INTERNATIONAL CORPORATION  :
LIMITED and PALMAILLE HOLDINGS LTD. :
                :

       Defendants-Appellees.   :
                :

---------------------------------------------------------X

## ANSWERING MEMORANDUM OF JIT INTERNATIONAL CORPORATION
## IN OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

**McLAUGHLIN & STERN, LLP**
**Attorneys for Defendant-Appellee**
**JIT INTERNATIONAL CORPORATION**
**260 Madison Avenue**
**New York, NY 10016**

Armand M. Paré, Jr.
Of Counsel

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

------------------------------------------------------X

LAURITZEN BULKERS, A/S

     Plaintiff-Appellant,

     - against -

JIT INTERNATIONAL CORPORATION
LIMITED and PALMAILLE HOLDINGS LTD.

     Defendants-Appellees.

------------------------------------------------------X

2 CA Docket No. 13-3131-CV

[S.D.N.Y. Civ. Action 13-3982 (WHP)]

## ANSWERING MEMORANDUM OF JIT INTERNATIONAL CORPORATION
## IN OPPOSITION TO EMERGENCY MOTION FOR STAY PENDING APPEAL

   This Memorandum of Law is submitted on behalf of Defendant-Appellee, JIT

International Corporation Limited ("JIT") in opposition to the emergency motion of Plaintiff-

Appellant, Lauritzen Bulkers, A/S ("Lauritzen") which seeks issuance of a stay pending appeal

of the order below which vacated the ex parte Order of Attachment obtained by Lauritzen.

## SUMMARY OF RELEVANT FACTS CONCERNING
## THE RESTRAINED JIT FUNDS *IN HONG KONG*

   This is a case in which Lauritzen seeks to bootstrap its way into having this Court

continue to restrain funds which are not in New York but are, in fact, in JIT's bank account in

Hong Kong with a foreign bank, the Hongkong and Shanghai Banking Corporation Limited

("HSBCHK"). The novel basis on which Lauritzen seeks to do this is on the theory that

HSBCHK has a "correspondent account" in New York with an affiliate, HSBC Bank USA, N.A.

("HSBCUSA"), and that JIT's Hong Kong based funds have some mystical presence in New

York because of this which subjects them to attachment under Rule B of the Supplemental Rules

for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil

Procedure (the "Supplemental Rules"). In connection with its ex parte application for a maritime

attachment, Lauritzen averred in its Complaint:

> 18: Lauritzen seeks to attach JIT's property including, but not
> limited to bank account funds or credits or funds or credits for the
> benefit of JIT and debits owed to Defendant <u>presently located in
> this District or in the hands of third parties within this District</u>.
>
>                        \*\*\*
>
> 20. JIT and Palmaille Holdings each maintain at least one active
> U.S. dollar bank account at Hong Kong [sic] and Shanghai
> Banking Corporation Limited ("HSBC").
>
>                        \*\*\*
>
> 22. This court also has jurisdiction over HSBC as a garnishee due
> to its correspondent account in New York HSBC Bank USA, N.A.
> and its possession of funds of the Defendants.
>
> > (emphasis added); (see Exhibit "2" to Power
> > Affidavit in support of motion)

The district court on the ex parte application gave Lauritzen the initial benefit of the

doubt that defendants' funds were, as alleged, in the district. The Order of Attachment stated in

the last paragraph of its preamble:

> The Verified complaint and the Declaration and *Supplemental
> Declaration* of James H. Power demonstrate that Defendant's
> (tangible or intangible) property is contained within Correspondent
> Bank accounts that are located in this district.
>
> > (italicized portion handwritten by Judge Pauley)
> > (see Exhibit "5" to accompanying
> > Affidavit of Armand M. Paré, Jr.)

The body of the attachment order specifically provided:

> **ORDERED**, that a copy of this Order be attached to and served …
> upon garnishees Hong Kong [sic] and Shanghai Banking
> Corporation ("HSBC") via service on HSBC Bank USA, N.A.
>
>                        \*\*\*

**ORDERED**, that *HSBC Bank USA* shall restrain $20,000,000.00 in the Correspondent Bank account of its customer Hong Kong [sic] and Shanghai Banking Corporation Limited (HSBC Bank) until such time as …

\*\*\*

**ORDERED**, that HSBC as garnishee shall immediately restrain funds of Defendants JIT and Palmaille Holdings up to the amount of $20,000,000.00

\*\*\*

(italicized portion handwritten
by Judge Pauley)
(see Exhibit "5" to accompanying
Affidavit of Armand M. Paré, Jr.)

The district court, appearing concerned about the allegations, added, by certain handwritten notations at the end of its Order of Attachment the following in italics:

**ORDERED**, that upon determining that it is in possession of any property which may be subject to this Order, *HSBC Bank USA* shall, as soon thereafter, as is practicable, advise the Plaintiff of such details about the attachment as are reasonably available to it; *and file a report under oath with the Court.*

(italicized portion handwritten by Judge Pauley)

HSBCUSA, acting conservatively in accordance with the literal words of the Order quoted above, then restrained $20,000,000.00 in the correspondent account for HSBCHK.

HSBCHK in Hong Kong also acting conservatively and in accordance with the literal words of the Order quoted above, then advised JIT in Hong Kong it was freezing JIT's funds in its Hong Kong account with HSBCHK, stating:

We enclose a copy of a Writ of Attachment and Garnishment, naming your Company as one of the defendants. We trust you would seek independent legal advice to protect your interest in the matter. As a result of these US proceedings, your account with us is now frozen.

(see Exhibit "2" to accompanying
Affidavit of Armand M. Paré, Jr.)

3

As indicated in the declaration submitted by JIT (attached to the accompanying Affidavit of Armand M. Paré, Jr., as Exhibit "1") the action by HSBCHK resulted in JIT being denied access to the following funds in it account in Hong Kong:

> HKD   52,427.57
> HKD   290.00
> AUD   1,464.561
> HKD   300,000.00
> USD   60,724.75

> (see JIT Declaration marked as Exhibit "1" to
> Affidavit of Armand M. Paré, Jr.)

The foregoing Hong Kong, Australian and U.S. dollars amount to approximately $107,551.64.[1]. Again, all these funds in Hong Kong in denominations of Hong Kong, Australian and U.S. Dollars were "frozen" by HSBCHK in JIT's Hong Kong account (and not just U.S. Dollars as sought by Lauritzen).

On July 3, 2013 HSBCUSA filed a verified report with the Court advising it had restrained $20,000,000.00 of HSBCHK's funds in its correspondent account in accordance with the Court's Order of Attachment. It also reported that the correspondent account of HSBCHK had no "subaccounts" of the defendants, as Lauritzen had averred, and that neither it nor HSBCHK had any funds of defendants in the district (see Exhibit "6" to Power Affidavit submitted with the motion). It requested that the attachment be partially vacated so that HSBCHK's correspondent account could be released from attachment. Lauritzen has complained in this motion that this report, verified by HSBCUSA's Mr. Scott Maciejewski, provided information as of the time of the "answer" and not as of the time when the attachment

---

[1] HKD 352,717.57 is equivalent to about $45,486.16 (at an exchange rate of 0.128959), Australian Dollars 1,494.56 is equivalent to about $1,330.73 (at an exchange rate of .908622). Including the $60,734.75, the total in U.S. dollars is about $107,551.64.

4

was served. Mr. Maciejewski, however, in response to this and Lauritzen's later speculation that funds may had been spirited away before the "answer," provided a subsequent declaration on August 2, 2013 in which he stated:

> From between at least June 13, 2013 – the date HBUS was served with the Writ and the Order – until at least the date of this declaration, HBUS has not held, attached or moved outside of the Southern District of New York any funds that belong to, or are held for the benefit of, Defendants.
>
> > (see Declaration and the end of Exhibit "9 to Power Affidavit in support of motion)

On July 24, 2013, the district court ordered that all parties were to appear at a status conference on August 9, 2013 and were directed to submit letters by August 2, 2013 regarding HSBCUSA's request that the Order of Attachment be partially vacated (see Exhibit "7" to Paré affidavit). Lauritzen, HSBC and JIT all provided letters in accordance with this directive. In a letter and declaration submitted on behalf of JIT, JIT confirmed it had no funds New York but that its funds in its Hong Kong account with HSBCHK had been frozen by that bank in response to the attachment (see Exhibit "1" to the accompanying Affidavit of Armand M. Paré, Jr.).

In accordance with the July 24 order, all parties were then heard on August 9, 2013 by the district court at the hearing scheduled for the purpose of the parties explaining their positions. Not at all surprisingly given the circumstances, the Judge ruled from the branch that Lauritzen had failed to fulfill its very basic burden of showing that the defendants' property was found within the district and hence vacated the order of attachment.

The balance of this Memorandum will discuss the indemnity nature of Lauritzen's claim against JIT, the multiple reasons why the decision below was correct, and the reasons why no stay of the order vacating the attachment should issue. There is one critical point to be borne in mind, however, and that, by itself, is dispositive of this motion: no funds of the defendant are in

5

this district; JIT's funds are in its account in Hong Kong and have been "frozen" there solely by action of HSBCHK in making them unavailable to JIT in conservative response to the attachment. It is respectfully submitted that under no circumstances should this Court sanction, by a stay or otherwise, an entirely improper extraterritorial restraint of a defendant's funds located abroad as has, in effect, been requested by Lauritzen.

## SUMMARY OF RELEVANT FACTS CONCERNING
## LAURITZEN'S UNDERLYING CLAIM

The unvarnished facts concerning Lauritzen's claim against JIT are as follows:

- Lauritzen's asserted claim against JIT is an indemnity claim for alleged cargo damage which arises under a chain of charter parties. That charter party chain begins with the owner of the vessel M/V OCEAN PREFECT chartering that vessel to Lauritzen. Lauritzen, in turn, chartered the vessel to JIT. JIT, in turn, entered into fixture agreements for the carriage of cargo on that vessel to two other entities.

- It is alleged that the cargo in question carried on the M/V OCEAN PREFECT was damaged in heavy weather. All that is known from Lauritzen's complaint is that Lauritzen has a possible claim, in indemnity, against JIT which is alleged to be in the amount of $20 million dollars. The basis of this claim and details of it are entirely unspecified. That claim is subject to arbitration in London. No party has paid or settled that cargo claim.

- All that has occurred to date is (1) that the Vessel Owner has had its Protection & Indemnity ("P&I") Club provide cargo interests in Venezuela with a P&I Club letter of undertaking (at no cost to the Vessel Owner) and (2) Lauritzen has had its P&I Club provide a P&I Club letter of indemnity to the Vessel Owner (at no cost

6

to Lauritzen). The Vessel Owner's claim against Lauritzen is also subject to London arbitration. There has been no findings of liability (nor any known substantial developments) in any of the claims or proceedings either in Venezuela or in London.

- The Lauritzen/JIT charter party contains an "Interclub Agreement." Under this Agreement, in order to be an a position to seek "apportionment" against JIT for a cargo damage claim, Lauritzen must show it has "properly <u>settled</u> or <u>compromised and paid</u>" the cargo claim <u>and</u> if so, apportionment may then be sought in "the amount <u>in fact borne</u> by the party to the charterparty seeking apportionment." In short, Lauritzen is in no position to presently seek apportionment. Also, contrary to Lauritzen's unsupported allegation, there is nothing in the charter that requires JIT to provide security to Lauritzen. Further, if there were, any breach of this would be subject solely to London arbitration.

### THE RELEVANT LAW WITH RESPECT TO MARITIME ATTACHMENTS AND BANKING LAW AND WHY LAURITZEN CANNOT MAKE A "STRONG SHOWING OF LIKELY SUCCESS ON THE "MERITS"

(1)    <u>The Requirement that a Defendant's Property be Found Within the District</u>.

Even under the now overruled case of <u>Aqua Stoli Shipping Ltd. v. Gardner Smith PTY Ltd.</u>, 460 F.3d 434, 445 (d Cir. 2006), a plaintiff was required, as part of its *prima facie* case in seeking a maritime attachment, to show "the defendant's property may be found within the district." In the waning days of EFT attachments under Rule B, the courts in this circuit routinely dismissed attachments where the plaintiff failed in its burden to show that a defendant's funds were found within the district. In <u>Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.</u>, 2009 U.S. Dist. LEXIS 34907 (S.D.N.Y. 2009), for example, the court said:

7

The fact that Rule B attachment orders are increasingly being issued subject to expiration dates also suggests that there is a temporal limit to when property must be attached. In *Marco Polo*, for example, Judge Koeltl issued a Rule B attachment valid for only sixty days – if no property was attached within that period, the attachment order would automatically expire unless plaintiff established cause for an extension. 2009 U.S. Dist. LEXIS 19057, 2009 WL 562254, *1. After the sixty-day window expired without any property being attached, Judge Koeltl dismissed the compliant, finding that "the requirement that the defendant's property be found in the district" had not been satisfied. 2009 U.S. Dist. LEXIS 19057, [WL] at *2. Plaintiff's allegation that defendant's funds *might* come into the district at some point because defendant transacted some of its business in United States dollars, that Artic makes here as well, was rejected as inadequate grounds for extending the attachment order…

Id. at page 4

Similarly, in <u>Global Dominion S.A. v. Fairport Shipping Ltd.</u>, 2009 U.S. Dist. LEXIS 69647

(S.D.N.Y. 2009), the court said:

These considerations, however, do not absolve Plaintiff of the burden of demonstrating to the Court, as part of its showing of entitlement to the Process of Maritime Attachment and Garnishment, that Defendants' "property may be found within the district …" *Aqua Stoli*, 460 F.3d at 445. In the Court's view, more is required to demonstrate a "plausible" entitlement to a maritime attachment than a conclusory allegation that Defendants "have or will have during the pendency of this action" property at any garnishee [sic] in the District.

Id. at p. 2

Here, Lauritzen has utterly failed in its burden to show that either defendants have funds within the district. Hence the Order of Attachment was properly vacated and the action dismissed.

8

(2)    The Broad Holding of the Jaldhi Case

Lauritzen offers a novel theory that the correspondent account of HSBCHK with HSBC

USA should somehow render JIT's funds in Hong Kong subject to attachment in New York.

There is no basis for that novel theory.

In the first place, as the district court below ruled, this very notion has been rejected by

this Court's broad pronouncement in The Shipping Corporation of India Ltd. v. Jaldhi Overseas

Pte. Ltd., 585 F.3d 58 (2d Cir. 2009). In that case, this Court overruled its prior decision in

Winter Storm Ltd. v. TPI, 310 F.3d 263 (2 Cir. 2002) which had allowed attachments in New

York of foreign bank credits made through electronic fund transfers ("EFTs") through

correspondent banks in New York. This Court in Jaldhi said:

> Our holding of Winter Storm not only introduced "uncertainty into
> the international funds transfer process," *id.*, but also undermined
> the efficiency of New York's international funds transfer business.
> As the Federal Reserve Bank of New York noted in its *amicus*
> curiae brief in support of the motion for rehearing *en* banc by the
> defendant in Winter Storm, "efficiency is fostered by protecting
> the intermediary banks; justice is fostered by expressly telling
> litigants where the process should be served... [Winter Storm]
> disrupt[ed] this balance and threaten[ed] the efficiency of funds
> transfer systems, perhaps including Fedwire." Amicus Br. of
> Federal Reserve Bank of New York 9, Winter Storm, 310 F.3d 263
> (No. 02-7078). Undermining the efficiency and certainty of fund
> transfers in New York could, if left uncorrected, discourage dollar-
> denominated transactions and damage New York's standing as an
> international financial center. *See e.g.,* PEB Commentary 6. n. 4
> ("Winter Storm and its progeny have had a far greater, and
> damaging, potential impact on U.S. and foreign banks located in
> New York than might have been anticipated."); Newman &
> Zaslowsky, 242 N.Y. L.J. at 3.

585 F.3d at 62

As the district court's order vacating the attachment noted, Lauritzen's novel theory that

correspondent bank accounts should render a foreign bank's customers all over the world subject

to attachment in New York "sweeps too broadly and it not supported by the record" (see Exhibit

9

"6" to Paré affidavit). There is no material difference between the havoc that prevailed over EFT attachments before <u>Jaldhi</u> as compared to what would certainly prevail under Lauritzen's far reaching correspondent banking theory.

(3)    <u>Shaffer v. Heitner</u>

There is a fundamental constitutional problem with Lauritzen's notion that funds of a defendant held abroad should be subject to jurisdiction in this district absent the defendant <u>purposefully availing</u> itself of being subject to jurisdiction. Under <u>Shaffer v. Heitner</u>, 433 U.S. 186 (1977), the Supreme Count extended the constitutional requirements of minimum contacts to quasi-in-rem jurisdiction. The Court in that case stated:

> It [the argument in favor of restraining stock certificates not physically present in Delaware] does not demonstrate that appellants have "purposefully avail[ed themselves] of the privilege of conducting activities within the forum State," <u>Hanson v. Denckla</u>, supra, at 253, in a way that would justify bringing them before a Delaware tribunal. Appellants have simply had nothing to do with the State of Delaware. Moreover, appellants had no reason to expect to be haled before a Delaware court.

186 U.S. at 216

In short, in a <u>quasi-in-rem</u> case, there must be a 'purposeful availing' of the privilege of conducting activities in the forum state by the owner of the <u>res</u>. Here, no such situation exists. JIT simply maintained a bank account *in Hong Kong* and did nothing to purposefully subject itself to jurisdiction in New York. Hence, core constitutional principles require that the effect of the improper attachment be immediately ended, as the district judge himself ruled when he refused to stay his decision to vacate the attachment. In doing so, he said:

> THE COURT: First of all, I've listened to your arguments at great length today. You've had an opportunity. And when I recognize that I've made a mistake, I want to cure it as quickly as I can. So

10

you can take it all up with the Second Circuit. I'm not granting any further stays than that permitted by statute.

(Exhibit "11" to Power Affidavit at p. 29)

(4)    The Nature of the HSBCHK "Correspondent Account" and JIT's Account With HSBC in Hong Kong

HSBCUSA provided its position in a letter to the district court on August 2, 2013. That

letter aptly describes the nature of JIT's account with HSBCHK and the nature of HSBCHK's

correspondent account. We quote from that letter (the abbreviation "HBAP" refers to HSBCHK

in quoted letter):

> This argument [i.e., Lauritzen's correspondent bank argument] misapprehends general principles of banking law. Once a deposit is made into a bank account, the account does not consist of "money belonging to the depositor and held by the bank," but instead "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank of Maryland v. Strumpj*, 516 U.S. 16, 21 (1995); *see also EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415, 423 (S.D.N.Y. 2012) (same). That is, the contents of HBAP's correspondent account does not consist of money belonging to HBAP, but rather a promise from HBUS to pay HPAP. [fn]. And certainly the correspondent account does not contain credits that HBAP may owe to Defendants.
>
>     Any credits or debts that HBAP does owe to Defendants, as HBAP account-holders, would rest in Hong Kong, not New York. Under New York law, the "situs if intangible property, such as beneficial interests, is 'the location of the party of whom performance is required by the terms of the contract." *Em Ltd. v. Republic of Argentina*, 2009 WL 3568433, at 9* (S.D.N.Y. Aug. 18, 2009) (quoting *ABKCO Indus, Inc. v. Apple films, Inc.*, 39 N.Y.2d 670, 675 (1976)). Any obligation that HBAP owes to Defendants as HBAP account-holders, would be performed in Hong Kong where HPAP is located. Plaintiff's attempt to attach such an obligation thus fails because the situs of the intangible property is located outside of the district. *See Allied Maritime Inc. v. Descatrade SA*, 2009 WL 4884160, at *2-3 (S.D.N.Y. Dec. 16, 2009) (finding attempt to attach funds in suspense account "fails if BNP Paribas New York held the suspense account because the debt owed [by BNP Paribas Paris] to [the payment originator] remains in Paris" and the "situs of [the originator's] beneficial

11

interest is the location of BNP Paribas Paris – here, France").

> (see August 2, 2013 letter at p. 6 from
> Sullivan & Cromwall, LLP on behalf of HSBCUSA
> found in Exhibit "9" to Power Affidavit in
> Support of Motion)

(5)     The "Branch Banking" or "Separate Entity" Rule

Under the so-called New York "branch banking" or "separate entity" rule every branch of

a bank is considered a separate entity and, because of this, pre-judgment attachment of an

account of a defendant at branch A of a bank does not reach funds of a defendant held in branch

B of the same bank.  There was some question as to whether this rule survived the Court of

Appeals' decision in Koehler v. The Bank of Bermuda Ltd., 12 N.Y.3d 533, 883 N.Y.S. 2d 763,

911 N.E.2d 825 (2009) which dealt with the post-judgment turn over procedure under New York

Civil Practice Law and Rules §5225 (as distinct from a pre-judgment attachment which gave rise

to the separate entity rule).  The later cases have held that this rule remains intact.

In In the Matter of Parbulk II A/S and Heritage Maritime, 25 Misc. 235, 935 N.Y.S.2d

829, 2011 N.Y. Misc LEXIS 5807 (N.Y. Sup. 2011), the court, finding Koehler had not

abrogated the "separate entity rule," dismissed an attachment since the banks held no funds of

the defendant in New York.  In  Global Technology, Inc. v. Royal Bank of Canada, 34 Misc. 3d

1209; 2012 N.Y. Misc LEXIS 42 (N.Y. Sup. 2012), the court applied the separate entity rule to

hold that a branch of a bank did not violate a post-judgment restraining notice which had been

served on a different branch.  Then, in Shaheen Sports, Inc. v. Asia Insurance Co. Ltd., 2012

U.S. Dist. LEXIS 36720 (S.D.N.Y. 2012) the court held that the separate entity rule remained in

effect and therefore refused to order a post-judgment turn-over of funds in Pakistan held by the

National Bank of Pakistan which had an office in New York.  Under the separate entity rule, the

12

attachment which has led to restraint of funds at HSBCHK in Hong Kong should be immediately vacated.

(6)    Maritime Attachments Should Not Issue for an Indemnity Claim

    (A)    The Basic Indemnity Rule

In this case, Lauritzen has not been sued by cargo interests. The most that can be said from Lauritzen's Complaint is that Lauritzen has had its P&I Club (at no additional cost to Lauritzen) provide a "letter of indemnity" by which Lauritzen's P&I Club undertook to pay any amount that may be found due and owing by Lauritzen to Head Owner. This letter of indemnity preserves all of Lauritzen's defenses and limitations (see penultimate paragraph of Exhibit "3" to Complaint). Of course, insofar as has been pleaded, Head Owner itself has not been found liable either and will, no doubt, claim a heavy weather defense under the applicable version of the Hague Rules. Hence, there is a double layer of "ifs" before Lauritzen's claim in indemnity against JIT becomes "ripe" for purposes of attachment under decisions in this Circuit.

The landmark case which holds that indemnity claims are not considered "ripe" for purposes of maritime attachment is Greenwich Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). In that case, Fidelity Shipping, the ship owner, chartered the vessel in question to Greenwich Marine and Greenwich Marine, in turn, subchartered the vessel in question to the Ministry of Supply of the United Arab Republic ("Ministry"). The Ministry alleged cargo damage and refused to pay Greenwich the balance of hire due for carriage of the cargo. As a result of this, Greenwich sued the vessel, the Ministry and Fidelity Shipping, the latter on the theory that if Greenwich should have liability to cargo interests, Greenwich was entitled to indemnity against Fidelity. Greenwich Marine also sought and obtained an attachment of Fidelity's vessel to secure Greenwich Marine's indemnity claim against Fidelity for alleged

13

cargo damage. On motion, the District Court thereafter dismissed the libel and attachment. This

was affirmed by this Court. Then Circuit Judge Marshall, writing for this Court found the claim

and attachment in indemnity premature stating:

> But the district court properly held that this claim was premature;
> no judgment had been entered against Greenwich for the cargo
> damage, no suit had been instituted against Greenwich for cargo
> damage, the Ministry, who already appeared in this action, had not
> sought to cross-libel Greenwich for the cargo damage; and in fact
> the Ministry had instituted two separate actions against the
> Alexandra and Fidelity for the same cargo damage. …
>
> ***
>
> There is an important difference between permitting a suit to stop
> the statute of limitations from running and permitting seizure of a
> vessel as security for a claim that may never fully ripen. This
> particular seizure may have only interfered with the Alexandra's
> voyage for a few days before a corporate security was substituted,
> but we are not prepared to say that the seizure and the substitution
> was not costly and burdensome. Fidelity must pay for a corporate
> security and the cost of an Underwriter's Letter of Undertaking is
> reflected in increased premiums. <u>Although a point may be reached
> where it would be fair to put Fidelity to this inconvenience, it is not
> at all clear that Judge Wyatt erred in holding that on the facts
> before him this point had not yet been reached.</u>
>
> (emphasis added)
> 339 F.2d at 9 et. seq.

Based on these considerations that an indemnity claim is premature and therefore provides no

proper premise for a maritime attachment, this Court affirmed the vacuture of that indemnity

claim and attachment. Other more recent cases holding that an indemnity claim will not support

a maritime attachment include <u>J.K. Int'l, Pty., Ltd. V Agriko S.A.S.</u>, 2007 W.L. 485435

(S.D.N.Y. 2007) and <u>Bottiglieri Di Navigazione Spa v. Tradeline, LLC</u>, 472 F. Supp. 2d 588

(S.D.N.Y. 2007).

(B)    Further Limitation on Attachments Under the Indemnity Provisions of the
       Interclub Agreement

As already indicated, the terms of the incorporated Interclub Agreement <u>require</u> that the

"claim has been properly <u>settled</u> or <u>compromised</u> and <u>paid</u>" and that the "amount sought" be "<u>in</u>

<u>fact borne</u> by the party to the charter party seeking apportionment" (see Paré Affidavit and

Exhibit "1"; Exhibit "A" thereto at paragraph 4 (c) and first sentence under "The apportionment"

heading). Decisions squarely hold that Lauritzen's claim in these circumstances does not give

rise to a basis for a maritime attachment. In <u>Sonito Shipping Co. Ltd. V. Sun United Maritime</u>

<u>Ltd.</u>, 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Judge Haight found that an indemnity claim under

the Interclub Agreement was not "ripe" as a matter of English. He said:

> In the <u>Strathnewton</u> the Court of Appeal stressed that the object of
> the ICA [the Interclub Agreement]"was clearly to cut through" the
> difficulties created by Clause 8 and the Hague Rules in respect of
> the fixing of liability for cargo damage as between shipowner and
> charterer, and added that the "condition precedent" for
> apportionment and indemnification under the ICA was that the
> cargo claims had been paid. "Condition precedent" is a term of art
> in the law; ordinarily, such a condition must be satisfied before an
> obligation arises or a cause of action accrues. This works no unfair
> hardship upon Sonito in this case. Sonito was not required to agree
> to the incorporation of the ICA in the charter party, but having
> done so is bound by it. For these reasons, I conclude that Sonito
> has not carried its burden of showing that at the time of the
> attachment it had a valid maritime claim against Sun United.

478 F. Supp. 2d at 543

The same result was reached in <u>T&O Shipping, Ltd. v. Lydra Mar Shipping Co. S.A.</u>, 415 F.

Supp. 2d 310 (S.D.N.Y. 2006) and <u>Precious Pearls, Ltd. v. Tiger Int'l Line Pte Ltd.</u>, 2008 U.S.

Dist. LEXIS 58453 (S.D.N.Y. 2008).

To put a finer point on matters in this case, here Clause 55 of the charter specifically

provides that the Interclub Agreement applies when "[t]he party <u>having paid the claim</u> shall

15

submit to the other party supporting documentation" (emphasis added), (see Exhibit "1" to Complaint which is found in Exhibit "2" to Power Affidavit in support of motion).

Under well-developed principles of this Court, prejudgment attachment should not issue for claims that sound in indemnity.

**POINT I**

**LAURITZEN CANNOT SATISFY THE
FOUR REQUIREMENTS FOR A STAY**

The four (4) factors necessary for granting a stay, as noted by this Court in In re: World Trade Center Disaster Site Litigation, 503 F.3d 167, 170 (2d Cir. 2007) are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Application of these factors to this case show the stay should be denied.

(1)  Strong Showing of Likelihood of Success on the Merits

Lauritzen cannot make the required "strong showing" of a "likelihood of success on the merits." We begin with the point that this Court generally reviews a "district court's decision vacating a maritime attachment order for abuse of discretion," Aqua Stoli, 460 F.3d at 439 (emphasis added). Further, here, Lauritzen has simply failed to fulfill its elementary burden of showing that the defendant's funds are in the district. Lauritzen's theories and speculations, especially on appeal, cannot change that. As indicated, what has occurred here is that JIT's funds have been restrained in Hong Kong. This is unquestionably improper. In the circumstances, there is no likelihood the decision below will be reversed. Indeed, a reversal would open the door to wholesale maritime attachments against all "correspondent accounts" at New York banks. The prospects of that after the clear pronouncement in Jaldhi are nil. Further,

16

as outlined above, Lauritzen's theory is at odds with core constitutional principles found in Shaffer v. Heitner and at odds with basic banking law, the "separate entity" rule and the indemnity rule. In short, there are multiple reasons for affirming the decision below, each of which is dispositive on its own.

(2)   Whether Applicant Will Be "Irreparably Harmed"

Lauritzen, likewise, cannot establish it will be irreparably harmed if a stay is not issued. In the first place, its claim is one for a money judgment. A claim for money damages alone does not generally give rise to "irreparable harm" justifying injunctive relief. Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1970) (per curiam); see also Ford v. Reynolds, 31 F.3d 351, 255 (2d Cir. 2003) ("To establish irreparable harm, the injury alleged 'must be one requiring a remedy of more than mere money damages'.") (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989); E.E.O.C. v. Local 638, No. 71-CV-2877(RLC), 1995 U.S. Dist. LEXIS 7756, 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' and therefore '[a] monetary loss will not suffice unless the movant provides evidence of damage[] that cannot be rectified by financial compensation.'") (quoting Sperry Int'l Trade, Inc. v. Gov't of Israel, 670 F.2d 8, 12 (2d Cir. 1982), and Tucker Anthony Realty Corp., 888 F.2d at 975). Case law indicates it is only when a defendant is shown to be insolvent or facing imminent bankruptcy that a different rule should pertain. Brenntag Int'l Chems., Inc., 175 F.3d at 250.

Second, JIT's dollar denominated funds in Hong Kong have been improperly restrained in the amount of approximately $60,000. Lauritzen's claim on the other hand, is in the amount of $20 million dollars. Lauritzen will not be irreparably harmed by a release of $60,000. Further, as shown in the accompanying affidavit of Armand M. Paré, Jr., Lauritzen has been and

17

still is on a worldwide hunt to attach property of JIT. In fact, although undisclosed by Lauritzen, it has already attached property elsewhere requiring JIT to place $600,000 in escrow to obtain release of that property. The suggestion that only this Court can relieve Lauritzen from its claim becoming an "empty rite" is simply wrong.

Third, Lauritzen suggests that stays of orders vacating maritime attachments are "routinely granted." As also shown in the accompanying affidavit of Armand M. Paré, Jr., this is simply not so. The facts of any given case should determine whether a stay is appropriate and here it clearly is not.

(3)   Substantial Injury to Other Parties Interested in the Proceedings

In addition to unduly depriving JIT of its funds in Hong Kong, a stay would also needlessly tie up $20 million dollars in HSBCHK's "correspondent account" with HSBC USA. There is no possible rationale for this substantial injury to another party.

(4)   Where the "Public Interest Lies"

This Court's broad decision in Jaldhi makes it abundantly clear that the public interest lies in making sure that "New York's standing as an international financial center" is not compromised by a free-for-all approach that allows funds on deposit in foreign banks around the world to be subject to attachment in New York simply because the foreign bank has a correspondent bank account in a New York bank. Virtually all foreign banks without offices in New York have correspondent accounts at banks in New York. Hence Lauritzen's novel theory that a New York Court can restrain funds held by depositors in banks abroad whenever that depositor's bank has a "correspondent account" in New York, is entirely at odds with maintaining New York as a preeminent banking center. Further, maintaining the restraint of funds in this case violates fundamental notions of due process under Shaffer v. Heitner and interferes with the policies that illuminate the separate entity rule and indemnity rules.

18

## CONCLUSION

It is respectfully submitted that Lauritzen's request for an emergency stay and stay pending appeal should be denied, as Lauritzen cannot (1) make a "strong showing of likelihood of success on the merits"; (2) show irreparable harm if the relatively modest amount attached is released; (3) provide any rationale to restrain HSBCHK's correspondent account in the amount of $20 million dollars; and (4) refute the adverse impact its theory would have on the standing of New York as an international banking center.

Dated: New York, New York
      August 22, 2013

McLAUGHLIN & STERN, LLP
Attorneys for Defendant-Appellee
JIT International Corporation Limited

By: _____
     Armand M. Paré, Jr. (AP 8575)
     260 Madison Avenue, 15th Floor
     New York, NY 10016
     Email: jpare@mclaughlinstern.com
     Telephone: (212) 952-6201